The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| ALAA ELKHARWILY, M.D., <br><br>                                Plaintiff, <br><br> v. <br><br> KAISER PERMANENTE; *et al.* <br><br>                                Defendants. | NO. 3:20-cv-5505-BHS <br><br> BBL DEFENDANTS' MOTION TO DISMISS, AND REQUEST FOR JUDICIAL NOTICE <br><br> NOTE ON MOTION CALENDAR: JULY 17, 2020 <br><br> **ORAL ARGUMENT REQUESTED** |

## I.    **INTRODUCTION**

Plaintiff is a prolific litigant, and in his second lawsuit against Franciscan Health System ("FHS"), Judge Leighton commented:

> The law predictably and wisely does not permit a dissatisfied litigant to keep suing on the same claim until he wins.[1]

This is now the third lawsuit Plaintiff has filed related to the 2012 rescission of his privileges to practice medicine at St. Joseph's Medical Center, which is owned and operated by FHS.[2] The

---

[1] *Elkharwily v. Franciscan Health Sys.,* No. 3:17-cv-05838-RBL, 2018 WL 690945, at *4 (W.D. Wash., Feb. 2, 2018) ("*Elkharwily II Opinion*"), *aff'd* 771 Fed. App'x 758 (9th Cir. 2019) cert. denied, 140 S. Ct. 1115 (2020) (the *Elkharwily II Opinion* and relevant *Elkharwily I* Orders (Dkts. 139, 145, 184 and 187) are provided in the attached Appendix).

[2] In addition, in 2010 Plaintiff resigned in lieu of being discharged from an affiliate of the Mayo Clinic. His three month tenure there resulted in years of litigation, in which all of his claims were dismissed on motions. *See Elkharwily v. Mayo Holding Co.*, 823 F.3d 462 (8th Cir. 2016).

BENNETT BIGELOW DEFENDANTS' MOTION TO DISMISS
(NO. 3:20-cv-5505-BHS) - 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

BBL Defendants successfully defended FHS in both prior cases. In *Elkharwily I*,[3] this Court (Judge Bryan) dismissed all claims but one on motions, and after an approximately two-week jury trial, the jury rejected Plaintiff's claim that his application for medical staff privileges was denied based on a disability. At trial and in post-trial motions, Plaintiff argued that defense witnesses had lied, and that the BBL Defendants had altered and redacted documents to hide why his privileges were rescinded. The jury, and Judge Bryan in post-trial motions, rejected those allegations.

In *Elkharwily II*,[4] Plaintiff asked Judge Leighton to vacate the *Elkharwily I* judgment under Fed. R. Civ. P. 60(d)(3) (fraud on the court). The alleged "fraud," according to Plaintiff, involved the exact same issues rejected in *Elkharwily I*, i.e., that FHS' attorneys, the BBL Defendants, and FHS concealed by redaction and alteration of documents the existence of proctors, and falsely argued based on perjured testimony that none were available. Judge Leighton held those claims were barred by *res judicata* and further imposed a modest $2,500 Rule 11 sanction on Plaintiff for filing frivolous claims. *Elkharwily II Opinion*, at *5.

Unfortunately, the Rule 11 sanction Judge Leighton imposed was insufficient to deter Plaintiff from filing more frivolous claims.  On the heels of the United States Supreme Court denying *certiorari* regarding the Ninth Circuit's affirmance of *Elkharwily I* and *II*, Plaintiff filed this third lawsuit – *Elkharwily III* – based on the same allegations adjudicated (and rejected) in his two prior cases. The only differences are the labels put on the claims, and the addition of FHS' lawyers and several other parties as defendants.

Plaintiff's claims against the BBL Defendants fail as plead. Res judicata/collateral estoppel, statute of limitations, litigation immunity and lack of duty owed to nonclients are among many defenses apparent on the face of the Amended Complaint. Plaintiff's claims against FHS' lawyers are frivolous, and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and 12(c).

---

[3] *Elkharwily v. FHS Health Sys.,* No. 3:15-cv-05579-RJB (W.D. Wash. Mandate filed Sept. 13, 2019).
[4] *Elkharwily v. FHS Health Sys.,* No. 3:17-cv-05838-RBL (W.D. Wash. cert. denied Feb. 24, 2020).

## II.  FACTUAL SUMMARY

This motion is based primarily on the public record in *Elkharwily I* and *II*, of which this Court may – and is hereby requested to – take judicial notice in their entirety. *See Harris v. Orange Cnty.*, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (court may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts).

**A.  FHS' Medical Executive Committee Rescinds Plaintiff's Temporary Privileges and Denies His Application Because Group Health Did Not Have Staff to Proctor Plaintiff at Night.**

In 2012, a Group Health affiliate ("Group Health") offered Plaintiff work as a night-shift hospitalist (or nocturnist), contingent on him receiving privileges at St. Joseph Medical Center. *Elkharwily III*, Dkt. 6-1 ("Am. Compl.") ¶¶ 7-8. FHS' Medical Executive Committee ("MEC") reviewed Plaintiff's application for privileges and temporarily granted them. But, it quickly rescinded them and denied his application based on a report by FHS' credentials committee noting concerns in Plaintiff's background. It asked Drs. deLeon and Haftel to interview him, who did so and expressed concerns about his clinical competence. The MEC ordered a competency assessment, noting that Group Health could provide on-the-job supervision and assessment of Plaintiff (i.e., proctor). *Elkharwily II Opinion*, at *1. Group Health proposed a daytime proctor program, but since Plaintiff was to be a nocturnist, the MEC determined that he needed nighttime proctoring. Am. Compl. ¶ 10. When Group Health reported that it did not have adequate staff to proctor Plaintiff at night, the MEC upheld the rescission of temporary privileges and denial of his application. Plaintiff lost his job at Group Health. *Id.* ¶¶ 12, 13; *Elkharwily II Opinion*, at *1.

**B.  In *Elkharwily I*, Plaintiff Repeatedly Argued – Unsuccessfully – That Witnesses Lied, and Documents Were Altered to Hide That Nighttime Proctors Were Available.**

**1.  Plaintiff's *Elkharwily I* Claims Are Rejected on the Merits.**

In 2015, Plaintiff sued FHS in Pierce County, asserting claims under the Washington Law Against Discrimination, RCW 49.60.030, and various other state and federal claims.[5] After

---

[5] *Elkharwily v. FHS Health Sys.,* No. 15-2-10437-9 (Pierce Cnty. Super. Ct.).

removal to this district (*Elkharwily I*, Dkt. 1), this Court dismissed all claims on motions but one – the WLAD claim for discrimination based on a disability. *Id.*, Dkts. 24 (12/1/2015 Order) and 84 (8/15/2016 Order). At trial in *Elkharwily I*, Plaintiff argued to the jury that FHS wrongfully rescinded his temporary privileges and denied his application because of his bi-polar disorder, and that the lack of available proctors was pretext. On October 19, 2016, the jury found in FHS' favor. *Elkharwily II Opinion*, at *1; *Elkharwily I*, Dkt. 126.

### 2.   Plaintiff's Motion for a New Trial Based on Alleged Perjury Is Denied.

On November 17, 2016, Plaintiff moved for a new trial, claiming that the verdict was the result of false evidence – claiming, among other things, that Dr. deLeon lied to the hearing panel about whether the MEC requested or sanctioned proctoring, that Dr. Cammarano lied at trial regarding whether FHS requested daytime proctoring, and whether Group Health refused to proctor him at its clinic. *Elkharwily I*, Dkt. 132 at 7-10. Judge Bryan denied the motion, determining that "[n]one of what Plaintiff presents in support of [his] motion rises to the level of a proven lie . . . that would justify a new trial." *Id.*, Dkt. 139 at 3. Plaintiff sought reconsideration on December 20, 2016, arguing that the verdict was the product of fraud because FHS' witnesses *and attorneys* (i.e., the BBL Defendants) lied to the jury in claiming that night proctoring was neither possible nor safe. *Id.*, Dkt. 140 at 6-7. Judge Bryan denied the motion because he was "not reasonably well satisfied that the testimony given by one or more material witnesses was false" and because Plaintiff had had ample opportunity during discovery and at trial to challenge the evidence. *Id.*, Dkt. 145.

### 3.   Judge Bryan Denies Plaintiff's First Rule 60 Motion Based on Alleged Fraud on the Court and Attorney Misconduct – the Same Allegations in This Case.

On January 3, 2017, Plaintiff sought relief under Fed. R. Civ. P. 60(b)(3) (fraud, misrepresentation or misconduct by opposing party) and (d)(3) (fraud on the court). *Id.*, Dkt. 146. Plaintiff's motion was rife with attacks on Mr. Megard (one of the BBL Defendants), and cited RPCs prohibiting making false statements to a tribunal, offering evidence the lawyer knows to be

BENNETT BIGELOW DEFENDANTS' MOTION TO DISMISS
(NO. 3:20-cv-5505-BHS) - 4

false, or alluding to matters the lawyer does not reasonably believe is supported by evidence. *Id.*, at 4. Plaintiff claimed to have discovered evidence of three nocturnists who could have proctored him, and he accused the BBL Defendants of concealing their name "through redacting minutes" of MEC committee meetings where their names "would certainly have been" and by failing to disclose their names in response to interrogatories. *Id.* at 4-7. Plaintiff accused Mr. Megard of "compounding fraud" by relying on false testimony by Drs. Haftel, deLeon, Cammarano, and Dempster (now Defendants in this case) as to the non-availability of nocturnist proctors. *Id.*, at 7-10. Plaintiff also contended that Mr. Megard misrepresented an August 7 performance plan which did not provide for proctoring as being the plan that the MEC rejected, when in fact the MEC rejected an August 22 plan that *did* provide for proctoring. *Id.*, at 10-12. Plaintiff accused Mr. Megard of misrepresenting Plaintiff's credentials and the duties of a nocturnist in opening statement, and of misrepresenting one witness' testimony in closing. *Id.*, at 12-14.

The BBL Defendants' response on behalf of FHS (and themselves) rebutted each of Plaintiff's contentions and defended counsels' conduct in discovery and at trial. *Elkharwily I*, Dkts. 164, 165, 168 and 169. On May 4, 2017, Judge Bryan denied the motion, and held:

> The court has read, read, and reread the parties' submissions in support of and in opposition to the FRCP 60 motion and has again considered the events of the trial. The court is firmly of the opinion that in discovery and at trial, there has been no showing, by either a preponderance or a clear and convincing standard, of "new discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 29(b)," nor has there been a showing, by either standard, of "fraud (whether previously called intrinsic or extrinsic) misrepresentation, or misconduct by an opposing party." FRCP 60(b)(2)(3).

> Plaintiff's showing has been nothing more than the kind of issues that commonly arise in the give and take of discovery and trial.

> Discovery was properly conducted in all respects.

> The jury was properly instructed about counsel's statements to the jury (Dkt. 128, Instruction No. 5), and none of defense counsel's statements amounted to fraud, misrepresentation or misconduct.

> The issues about the accuracy and consistency of the testimony of various witnesses over seven days of trial were of the usual kind commonly seen in trials,

1

and there is no showing of any fraud, misrepresentation, or misconduct.

2

The post-trial motions have focused on a collateral issue – whether "proctoring" (supervision) was available to assist and train plaintiff as a nocturnal hospitalist….

3

4

It became non-party Group Health's responsibility to provide nocturnal proctoring to plaintiff. Dr. Dempster of Group Health testified that Group Health could not provide appropriate nocturnal proctoring in spite of hiring four full time equivalent hospitalists. *See* Dkt. 180, page 31 line 14-19 & page 35, line 10. Plaintiff now alleges that there were Group Health nocturnalists hospitalists who, unbeknownst to plaintiff, could have proctored plaintiff. This allegation appears contrary to the evidence. No witness testified that Group Health physicians were qualified and available to proctor plaintiff at night. Plaintiff's counsel was the only person to conclude, without support, "that Dr. Pujol, Dr. Hasnain, and Dr. Thong were available to proctor him [plaintiff] at night." Dkt 172, page 9 at line 3. This unsubstantiated statement, without any support on the record, is not sufficient to trigger Federal Rule of Civil Procedure 60(b).

5

6

7

8

9

10

*Id.* Dkt. 184 at 2-4. Undaunted, on May 8, 2017 Plaintiff sought reconsideration. *Id.*, Dkt. 185. He

11

claimed to have "developed information since the [last] hearing . . . that there were GHP

12

hospitalists available and [sic] qualified and willing to proctor Plaintiff . . . at and after the

13

Hearing Panel." *Id.* at 2. Specifically, he claimed to have spoken with Dr. Thong – one of the

14

three persons he argued in his prior motion could have proctored him – in the days after his Rule

15

60 motion was denied, and that Dr. Thong corroborated that he and the other doctors could have

16

proctored him. *Id.*, Dkt. 186. Judge Bryan denied that motion a day later, holding that "much of

17

the alleged new evidence [was] hearsay . . . [and] could have been brought to the court's attention

18

earlier with reasonable diligence." *Id.*, Dkt. 187.

19

**C.    Judge Leighton Rejects Plaintiff's Attempt to Resurrect the Same "Fraud" Arguments in *Elkharwily II*, As Barred by *Res Judicata*.**

20

As his appeal of *Elkharwily I* proceeded, on October 18, 2017 Plaintiff sued FHS again,

21

attempting a "collateral attack" on the prior judgment under Rule 60(d)(3). *Elkharwily II*, Dkt. 1.

22

Although FHS was the named defendant, many of Plaintiff's allegations were directed at the BBL

23

Defendants. His complaint is replete with references to "**DEFENDANT'S COUNSEL'S**

24

**DUTIES RE: FRAUD ON THE COURT**" (*id.* at 2), counsel's obligations to the adverse party

25

and to the court and citations to RPCs allegedly violated by counsel (*id.* at 3-5), and allegations of

26

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

false statements, concealing and alteration of evidence, and solicitation of perjury by counsel regarding the availability of the three doctors to proctor Plaintiff (*id.* at 6-23). These were "the same allegations that Judge Bryan already addressed and rejected" on at least three occasions in post-trial motions in *Elkharwily* I – claims that FHS' attorney "'concealed by redaction and alteration of documents all references to Drs. Pujol, Hasnain and Thong in all minutes . . . [and] falsely stated to the jury . . . [that] Group Health . . . did not have staff to monitor Dr. Elkharwily at night.'" *Elkharwily II Opinion*, at *2. Plaintiff's amended complaint in *Elkharwily II* also "contain[ed] facts and accusations that Judge Bryan already rejected. [Plaintiff] claim[ed] … that he recently learned from Thong and other [FHS] personnel that doctors were indeed available to proctor him." This new information caused him to analyze the committee minutes again, which had been in his possession for months prior to trial, and he "discovered that [FHS'] attorney 'fabricated and altered those committee minutes so as to conceal evidence of the availability, and qualifications of those three doctors to proctor him . . .'" *Elkharwily II Opinion*, at *3 (citing *Elkharwily II*, Dkt. 9 at 6-9). Based on these allegations, Plaintiff asked the *Elkharwily II* Court – Judge Leighton – to vacate Judge Bryan's final judgement and let him re-litigate his discrimination claim even as he was continuing to pursue his *Elkharwily I* appeal. *Elkharwily II*, Dkt. 1 at 23, Dkt. 9 at 24.

FHS, represented again by the BBL Defendants, moved to dismiss on November 17, 2017, arguing that the claims were barred by *res judicata*, and did not meet the "plausibility" pleading standard required to establish grounds to vacate the prior judgment under Fed. R. Civ. P. 60(d)(3). *Id.*, Dkt. 12; *see also id.* Dkts. 18, 19, 25-27, 29 and 30 (comprising the full record on that motion). As briefing closed, on December 29, the BBL Defendants also filed a Rule 11 motion to deter Plaintiff's "repetitive and abusive litigation tactics in bad faith and forcing [FHS] to incur the expense of defending against these allegations and responding to frivolous allegations of fraud." *Id.*, Dkt. 28 at 2; *see also id.* Dkts. 33 and 34 (comprising the full record on that motion). Both motions articulated in detail how the allegations in *Elkharwily II* simply repeated the

BENNETT BIGELOW DEFENDANTS' MOTION TO DISMISS
(NO. 3:20-cv-5505-BHS) - 7

Byrnes ♦ Keller ♦ Cromwell llp
38th Floor
1000 Second Avenue
Seattle, Washington 98104
(206) 622-2000

allegations previously addressed and rejected in *Elkharwily I*. Judge Leighton granted both motions on February 2, 2018. *See Elkharwily II Opinion*. He held that the *Elkharwily II* claims were barred by *res judicata*, finding an identity of claims and parties and a final judgment on the merits. Plaintiff argued that the issues were different because his *Elkharwily I* Rule 60 motion was based on Fed. R. Civ. P. 60(*b*)(3), not (*d*)(3) – even though the prior motion expressly cited and relied on the latter standard as well. Judge Leighton found that distinction both unavailing and frivolous. He stated in dismissing the case:

> Elkharwily clearly and repeatedly insisted to Judge Bryan that the verdict and the judgment were the result of fraud—he claimed then, as he does now, that Franciscan's attorney altered or forged the committee minutes to conceal the identity of proctors. Judge Bryan fully heard and repeatedly rejected these claims and his judgment and orders are on appeal. The law predictably and wisely does not permit a dissatisfied litigant to keep suing on the same claim until he wins.

*Elkharwily II Opinion*, at \*4. He then stated in granting FHS' sanctions motion:

> Elkharwily has long been on notice that his fraud claims were or could have been litigated previously, even if they were meritorious. Elkharwily has made no real attempt to articulate why *res judicata* does not apply ....

*Id.*, at \*5. Demonstrating great restraint, Judge Leighton imposed a sanction of only $2,500.

Plaintiff appealed. In 2019 the Ninth Circuit affirmed the *Elkharwily I* and *II* judgements in a unified opinion. *Elkharwily v. Franciscan Health Sys.,* 771 Fed. App'x 758 (9th Cir. June 7, 2019). Earlier this year, the United States Supreme Court denied his petition for *certiorari*. *Elkharwily v. FHS Health Sys.*, 140 S. Ct. 1115 (2020).

### D.   In *Elkharwily III*, Plaintiff Seeks to Relitigate the Denial of Privileges for a Third Time Based on the Same Allegations Adjudicated in *Elkharwily I* and *II*.

For most litigants, Judge Leighton's not-so-subtle $2,500 warning would have been enough. Not so for Plaintiff. On May 1, 2020 – barely two months after exhausting his appeals in his prior lawsuits – he filed a third lawsuit in Pierce County Superior Court. This time, Plaintiff also sued FHS lawyers in the prior two cases, several doctors involved in the underlying events and witnesses in the first case, and the Group Health/ Kaiser Permanente insurance plans.

BENNETT BIGELOW DEFENDANTS' MOTION TO DISMISS
(NO. 3:20-cv-5505-BHS) - 8

BYRNES ◆ KELLER ◆ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

But the allegations and relief sought in this case, *Elkharwily III,* are no different than in his first two lawsuits. This current lawsuit is an amalgamation of the same claims alleged and disposed of in the *Elkharwily I* complaint, the *Elkharwily I* post-trial motions, and in *Elkharwily II*. Plaintiff claims that FHS improperly rescinded his privileges and denied his application to practice at St. Joseph even though there were nighttime proctors available, based on false testimony by various witnesses, and the alteration of documents by its employees and lawyers. Thus, he lost his temporary privileges and so lost his job with Group Health. *Compare Elkharwily I*, Dkts. 23, and 146, *Elkharwily II*, Dkt. 9, and *Elkharwily III*, Dkt. 6-1 (Am. Compl.). The only differences are some new, additional Defendants who were involved in various roles in the prior lawsuits, and the labels Plaintiff now ascribes to the same claims previously adjudicated. In *Elkharwily I* and *II* Plaintiff alleged that the conduct defamed him, violated the WLAD (RCW 49.60.030), the Rehabilitation Act (29 U.S.C. § 794), the Civil Rights Act (42 U.S.C. § 200(d)) and the False Claims Act (31 U.S.C. § 3729). By extension into the litigation, the conduct entitled him to a new trial because the verdict was based on false evidence, and entitled him to relief from the judgment for fraud, misrepresentation or misconduct by an opposing party (Fed. R. Civ. P. 60(b)(3)) and fraud upon the court (*id.* 60(d)(3). In *Elkharwily III*, he calls the same conduct breach of contract, negligence, tortious interference, civil conspiracy, and intentional infliction of emotional distress by all defendants, and fraud by FHS, its employees and its lawyers.

## III.   <u>ARGUMENT</u>

### A.   <u>The Controlling Pleading Standard.</u>

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual

BENNETT BIGELOW DEFENDANTS' MOTION TO DISMISS
(NO. 3:20-cv-5505-BHS) - 9

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the Court must accept as true the complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper 12(b)(6) motion. *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) *opinion amended on denial of Rehearing*, 275 F.3d 1187 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

**B.**    **Grounds for Dismissal Applicable to All Claims.**

    **1.**    **Plaintiff's Claims Against the BBL Defendants Are Barred by Application of Both *Res Judicata* and Collateral Estoppel Doctrines.**

    Plaintiff's claims are all barred by application of both *res judicata* and collateral estoppel.

Courts have a strong preference for finality of judgments. *In re Levander*, 180 F.3d 1114, 1119 (9th Cir. 1999). A final judgment on the merits of an action precludes the parties from re-litigating issues that were, or could have been, raised in that action. *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citing *Cromwell v. Cnty. of Sac.*, 94 U.S. 351, 352 (1876)). The principle of *res judicata* thus renders a judgment on the merits an absolute bar to relitigation between parties and those in privity with them of every matter offered and received to sustain or defeat the claim or demand, and to every matter which might have been received for that purpose. *Comm'r v. Sunnen*, 333 U.S. 591, 597 (1948); *Chicot Cnty. Drainage District v. Baxter State Bank*, 308 U.S. 371, 375 (1940). Under the *res judicata* doctrine, a final judgment on the merits of an action precludes the parties from re-litigating issues that were, or could have been, raised in that action. *Allen*, 449 U.S. at 94. *Res judicata* applies whenever there is "1) an identity of claims, 2) a final

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

judgment on the merits, and 3) identity or privity between parties." *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997) (citing *Blonder-Tongue Lab. v. Univ. of Ill. Found.*, 402 U.S. 313, 323-24 (1971)); *U.S. ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 909 (9th Cir. 1998) (*Res judicata* bars relitigation of all grounds of recovery that were asserted, or could have been asserted, in a previous action between the parties resolved on the merits.).

When a federal court sits in diversity jurisdiction, it applies the state's law of collateral estoppel. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). In Washington, collateral estoppel applies where: "(1) the issue in the earlier proceeding is identical to the issue in the later proceeding, (2) the earlier proceeding ended with a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party, or in privity with a party, to the earlier proceeding, and (4) applying collateral estoppel would not be an injustice." *Schibel v. Eyemann*, 399 P.3d 1129, 1132 (Wash. 2017). The purpose of collateral estoppel is not "to deny a litigant his day in court," but to "prevent retrial of one or more of the crucial issues or determinative facts determined in previous litigation." *Luisi Truck Lines, Inc. v. Wash. Utils. And Transp. Comm'n*, 435 P.2d. 654, 659 (Wash. 1967). If a new argument is raised in the second action regarding something already litigated in the first action, "the prior determination of the issue is conclusive" even if the "argument relevant to the issue was not in fact expressly pleaded." 18 James Wm. Moore, et al., *Moore's Federal Practice* § 132.02(2)(c) (3d ed. 2010); *see also Paulo v. Holder*, 669 F.3d. 911, 917-18 (9th Cir. 2011) ("The fact that a particular argument against [a particular issue] was not made ... and not addressed ... does not mean that the issue ... was not decided."). Unlike the *res judicata* doctrine, both parties to the lawsuit do not have to be the same for collateral estoppel to apply – rather, only the party against whom collateral estoppel is asserted must be the same. *See Schibel*, 399 P.3d at 1132.

Both doctrines apply to bar Plaintiff's claims in this case. There were final judgments in both prior cases. Plaintiff was a party to both prior cases, and while the BBL Defendants were not formally named as parties in *Elkharwily I* or *II*, ample authority holds that the attorney for a

BENNETT BIGELOW DEFENDANTS' MOTION TO DISMISS
(NO. 3:20-cv-5505-BHS) - 11

party is in privity with that party for purposes of *res judicata* analysis, particularly where (as here) the conduct of counsel is the subject of the claims adjudicated.[6]

The identity of claims and issues is met in all respects. In both prior cases, and now, Plaintiff challenges the termination and denial of privileges based on lack of available proctors:

- In *Elkharwily I* Plaintiff argued that "[a] major issue in the trial was whether Defendant refused to give Plaintiff a chance to prove his competency through 'proctoring' by Group Health hospitalists …. Defendant asserted that Group Health could not proctor Plaintiff at night and that this was an important factor in denying privileges to Plaintiff, and argued so to the jury." *Elkharwily I*, Dkt. 172 at 4. He claimed a number of nocturnists *that he was aware of at trial* were available to proctor him (*see id.*, Dkt. 148, Dkt. 165-3 at 135:25-136:9), which was in direct with Dr. Dempster's testimony at trial. *Id.*, Dkt. 168; *id.* Dkt. 169-1 at 73:5-12. Dr. Dempster testified unequivocally that Group Health did not have the resources for proctoring Plaintiff at night, e.g., unqualified redundant staffing. *Id.*, Dkt. 169-1 at 35:6-17, 39:6-13. This evidence was again recognized and considered by the Court in denying the FRCP 60 Motion. *See id.*, Dkt. 184 at 3-4

- He argued in *Elkharwily II* that "a crucial issue in *Elkharwily I* was whether Defendant refused to give Plaintiff a chance to prove his competency through proctoring by Group Health System hospitalists at night at Defendant's hospital...Defendant claimed…that the unavailability of Group Health hospitalists to proctor Plaintiff at night was the most important reason for Defendant denying privileges to Plaintiff, and Defendant's counsel so argued to the jury." *Elkharwily II* Dkt. 9 ¶¶ 26-27. He again alleged that there were Group Health hospitalists to proctor him at the relevant time at St. Joseph. *See Elkharwily II*, Dkt. 9 ¶ 29.

- In *Elkharwily III*, Plaintiff again alleges that "Group Health and Dr. Dempster denied that Group Health had credentialed privileged nocturnist(s) to proctor Plaintiff … throughout the pendency of Plaintiff's application and appeal process" and "failed and refused to provide credentialed, privileged nocturnists to Proctor Plaintiff" when "Group Health in fact employed three credential, privileged nocturnists … who were

---

[6] *See, e.g.*, *Weinberger v. Tucker*, 510 F.3d 486, 493 (4th Cir. 2007); *In re El San Juan Hotel Corp.*, 841 F.2d 6, 10 (1st Cir. 1988) (attorney held in privity with client/party where attorney allegedly participated as "co-perpetrator" in wrongdoing that was subject of underlying litigation); *Simpson v. Chicago Pneumatic Tool Co.*, 693 N.W.2d 612, 614 (N.D. 2005) (privity between party and counsel exists for purpose of *res judicata* based on alleged discovery misconduct in first lawsuit that was rejected as grounds for new trial); *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235 n.6 (7th Cir. 1986) (bank defendant's attorneys alleged to have submitted forged and altered documents in mortgage foreclosure proceedings held in privity with bank for purposes of *res judicata*); *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1169 (10th Cir. 2000) (defendants' attorneys in privity for *res judicata* purposes where suit involved their capacity as defense counsel in prior lawsuit); *Verhagen v. Arroyo*, 552 So.2d 1162, 1164-65 (Dist. Ct. App. Fla. 1989) (privity between counsel and defendant client exists for *res judicata* purposes where attorney alleged to be involved in underlying conduct challenged in first lawsuit); *Merchants State Bank v. C.E. Light*, 458 N.W.2d 792, 794-95 (S.D. 1990) (attorney for defendant client held in privity and barred from relitigating issues lost in prior litigation);

BENNETT BIGELOW DEFENDANTS' MOTION TO DISMISS
(NO. 3:20-cv-5505-BHS) - 12

available to proctor Plaintiff." *Elkharwily III*, Dkt. 6-1, ¶¶ 11, 12, 14; *see also id.* ¶¶ 13, 25-27, 29, 34, 36, 46, 53, 54.

In both prior cases, and now, Plaintiff claims that the BBL Defendants and others redacted meeting minutes and engaged in other misconduct during the credentialing process and appeals to conceal why privileges were revoked:

- In *Elkharwily I*, Plaintiff argued that defense counsel committed fraud "regarding two alleged core issues in denying Plaintiff privileges – night proctorship and board certification." *Elkharwily* I, Dkt. 172 at 4. Specifically, he contended that defense counsel committed fraud by concealing evidence through redacting minutes of Regional Credentialing Committee and Medical Executive Committee meetings at which privileges were discussed.

- In *Elkharwily II*, he alleged that defense counsel concealed from him the contents of the minutes from Defendant's Regional Credentialing Committee and Medical Executive Committee. *Elkharwily II*, Dkt. 9 ¶ 43.

- In *Elkharwily III*, Plaintiff again alleges that "[t]hroughout the credentialing process" the BBL Defendants and others "denied and intentionally interfered in Plaintiff's right to a duly and procedurally correct Credentialing process … by falsely representing … that [they] had provided true and correct copies of the original minutes of committees that had considered and then denied Plaintiff's application for privileges. Instead, [they] provided Plaintiff and Credentialing committees with altered and/or forged minutes, not true, not correct, and not complete copies of original minutes." *Elkharwily III*, Dkt. 6-1, ¶¶ 17-18, *see also id.* ¶¶ 38-45, 51-52, 61, 67. Plaintiff alleges that the BBL Defendants and others "made misrepresentations and false statements, including under oath, in multiple and different tribunals, court and depositions that repeated the false statements that the minutes were authentic, original and complete and not forged or altered, or incomplete." *Id.* ¶ 72.

The same arguments were also sprinkled throughout Plaintiff's Motion for New Trial, the related Motion for Reconsideration, and his Motion for Reconsideration of Plaintiff's Motion for Relief from Judgment in *Elkharwily I. See Elkharwily I*, Dkts. 132, 136, 138, 140, 185, 186. The *Elkharwily I* Court considered and rejected them each time. And, in *Elkharwily II* the Court recognized the overlap of allegations and applied *res judicata* to dismiss claims based on the same allegations in Plaintiff's second lawsuit. *See generally Elkharwily II Opinion.*

The same grounds apply to bar Plaintiff from making and litigating such allegations a third time. It does not matter that Plaintiff couches his claims in other theories of liability. Newly articulated claims based on the same transactional nucleus of facts are still subject to a *res judicata* finding if the claims could have been brought in the earlier action. *Tahoe–Sierra Pres.*

*Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077-78 (9th Cir. 2003). It is well-settled that an independent action for fraud may not be entertained if there was an opportunity to have the grounds now relied upon fully litigated in the original action. *M.W. Zack Metal Co. v. Int'l Nav. Corp. of Monrovia*, 675 F.2d 525, 529 (2d Cir. 1982) "Independent actions are thus barred where plaintiff had ample opportunity to or, in fact, did raise the alleged fraud in the underlying action." *Reiffin v. Microsoft Corp.*, No. C11-03505 CRB, 2011 WL 5104467, at *4 (N.D. Cal. Oct. 26, 2011) (citing *Duse v. IBM Corp.*, 212 F.R.D. 58, 61-62 (D. Conn. 2002)). Liability based on every one of Plaintiff's allegations in this case could have been – and was – raised in *Elkharwily I* and *II*.[7]

Under these circumstances, there is no manifest injustice in applying the doctrine of *res judicata* to the case at hand. *See Tonti v. Petropoulous*, 656 F.2d 212, 216-17 (6th Cir. 1981) (finding no error in the district court's rejection of the defendant's repetitive allegations of judicial bias that were rejected by the appellate courts and by the Chief Judge of the court on which the allegedly biased judge sat). Nor is there to the application of estoppel, which element is generally concerned with procedural unfairness. *See Christensen v. Grant Cnty. Hosp. Dist. No. 1*, 96 P.3d 957, 962 (Wash. 2004). "[W]hether the decision in the earlier proceeding was substantively correct is generally not a relevant consideration in determining whether application of collateral estoppel would work an injustice." *Id.* at 966. Here, the orders of Judge Bryan and Judge Leighton, all of which have been affirmed on appeal, leave no question that there was no procedural unfairness in those prior lawsuits.

Indeed, Judge Leighton's dismissal of the claims in *Elkharwily II* on *res judicata* grounds bars not only Plaintiff's relitigation those substantive claims, but also relitigation of the application of *res judicata* to bar them. This lawsuit gives literal meaning to Yogi Berra's famous quote: "It's like déjà vu all over again."

---

[7] There is also no fabricated documentation in this case. As addressed in prior briefing and orders, Plaintiff's allegations regarding concealment in documentation were based on Court-sanctioned redactions of documents produced to Plaintiff.

BENNETT BIGELOW DEFENDANTS' MOTION TO DISMISS
(NO. 3:20-cv-5505-BHS) - 14

2.      **Plaintiff's Claims Against the BBL Defendants Are Barred by Application of Litigation Immunity.**

All of the BBL Defendants' conduct alleged by Plaintiff occurred in their capacity as FHS' attorneys during the credentialing process, related appeals, and the following lawsuit *Elkharwily I.* The litigation immunity doctrine bars claims against opposing counsel for conduct such as Plaintiff alleges in this case, by counsel on behalf of a client. An attorney is immune from litigation by an opposing party for actions taken on behalf of a client against that party, both during and prior to formal litigation. *Jeckle v. Crotty*, 85 P.3d. 931, 937-38 (Wash. Ct. App. 2004) (citing *Kittler v. Eckberg, Lammers, Briggs, Wolff & Vierling*, 535 N.W.2d 653, 657-58 (Minn. Ct. App. 1995) (litigation immunity precludes suits against opposing counsel for good faith conduct prior to commencing litigation)).

It is seldom appropriate to sue an attorney for litigation activity. *See Rains v. State*, 674 P.2d 165, 171 (Wash. 1983) (disapproving counterclaim adding plaintiff's attorney as third party defendant for malicious prosecution). The doctrine creates broad immunity for witnesses, parties and their counsel for statements made in relation to the judicial proceedings in which they were made and have any bearing on the subject matter of the litigation. *Bruce v. Byrne-Stevens & Assocs. Eng'rs, Inc.*, 776 P.2d 666, 667 (Wash. 1989); *McNeal v. Allen*, 621 P.2d 1285, 1286-87 (Wash. 1980); *Jeckle*, 85 P.3d at 937-38; *Demopolis v. Peoples Nat'l Bank of Wash.*, 796 P.2d 426, 429 (Wash. Ct. App. 1990). Extending the witness immunity privilege to attorneys is "based upon a public policy of securing to them as officers of the court the utmost freedom in their efforts to secure justice for their clients." *McNeal*, 621 P.2d at 1286-87.

While the immunity is generally applied to bar defamation claims, it is not limited to defamation. T. Leigh Anenson*, Absolute Immunity from Civil Liability: Lessons for Litigation Lawyers*, 31 Pepp. L. Rev. 915, 927-28 (2004). Washington courts have applied the privilege to bar other torts based on acts pertinent to or material to judicial proceedings. For example, in *Jeckle,* the plaintiff sued attorneys who had sued him before. Because the plaintiff's tort claims of interference with a business relationship, outrage, infliction of emotional distress, and civil

BENNETT BIGELOW DEFENDANTS' MOTION TO DISMISS
(NO. 3:20-cv-5505-BHS) - 15

Byrnes ♦ Keller ♦ Cromwell llp
38th Floor
1000 Second Avenue
Seattle, Washington 98104
(206) 622-2000

conspiracy were based on acts related to and pertinent to earlier lawsuits, the Court of Appeals held the claims were properly dismissed under Washington Civil Rule 12(b)(6). *Jeckle*, 85 P.3d at 938. *See also Lahrichi v. Curran*, No. 651447-1, 2011 WL 5222806 (Wash. Ct. App. Oct. 31, 2011) (unpublished) (dismissing breach of confidentiality agreement, violation of privacy, tortious interference, and other tort claims based on alleged misconduct during in prior employment discrimination federal litigation); *cf. also Taylor v. McNichols*, 243 P.3d 642, 652-58 (Idaho 2010) (litigation privilege renders attorney immune from suit by litigation adversary for conduct or communications within the scope of representing attorney's client's interests in litigation, and not solely for attorney's personal interests).

The litigation immunity privilege applies here to bar Plaintiff's claims against the BBL Defendants for their conduct in regard to the production of meeting minutes,[8] and all other conduct on their part referenced in Plaintiff's complaint.

**C.** **Grounds for Dismissal Applicable to Specific Claims.**

**1.** **Plaintiff's Claims Against the BBL Defendants Are Barred by Application of Statutes of Limitations.**

All of Plaintiff's claims are barred by the various statutes of limitation that govern them.

Plaintiff's breach of contract claims are governed by a three-year statute of limitations applicable to alleged oral agreements that run from the date of breach. RCW 4.16.080(3). The alleged breaches occurred in the credentialing process and related appeal that were concluded in early 2013, more than seven years ago.[9]

Plaintiff's tort claims for fraud, negligence, tortious interference and civil conspiracy are also governed by three year statutes of limitation that run no later than the date on which Plaintiff was on inquiry notice of such claims. RCW 4.16.080(2) and (4). While Plaintiff alleges that he

---

[8] As discussed above, Judge Bryan expressly held that "[d]iscovery was properly conducted in all respects," that counsel's statements to the jury did not "amount[] to fraud, misrepresentation or misconduct," and that Plaintiff had made "no showing of any fraud, misrepresentation, or misconduct." *Elkharwily I*, Dkt. 184 at 2-4.
[9] Even if Plaintiff alleged a breach of a written agreement (which he does not), the six year statute of limitation applicable to such claims would bar such a claim as well. RCW 4.16.040(1).

BENNETT BIGELOW DEFENDANTS' MOTION TO DISMISS
(NO. 3:20-cv-5505-BHS) - 16

did not actually become aware of certain matters until May 2017 or later, the relevant date is that on which Plaintiff was sufficiently on notice to inquire into them. As demonstrated by numerous public filings, Plaintiff was on notice to inquire into the availability of other proctors, and the accuracy of meeting minutes from the credentialing process, as early as when he appealed the termination of privileges in early 2013, and no later than when he filed *Elkharwily I* in July 2015. Indeed, his post-trial motions in *Elkharwily I* prove his *actual* notice of all that he complains of as of November 2016 (*see Elkharwily I*, Dkt. 132 (motion for new trial)), and reinforced in his January 2017 motion for relief under Rule 60 (*Id.*, Dkt. 146). Judge Bryan held that Plaintiff had such actual notice and/or ample opportunity to engage in discovery related to these issues, in denying these motions and related motions for reconsideration. *Id.*, Dkts. 139, 145, 184 and 187.

## 2. Plaintiff's Negligence Claims Fail Because He Pleads No Plausible Claim That BBL Defendants Owed Him a Duty of Care.

Plaintiff does not allege (nor could he) that he was the BBL Defendants' client, but rather that he was *not* BBL's client, and that it represented his litigation adversary, FHS. As alleged, the BBL Defendants owed Plaintiff no duty of care that would support a negligence claim.

A Washington attorney owes a duty to a nonclient only if the nonclient is the direct and intended beneficiary of the retention, and even then, only if other elements are met. *Trask v. Butler,* 872 P.2d 1080, 1084 (Wash. 1994). Such a duty to a non-client can arise in limited circumstances, based on a balancing of six factors. *Id.* The threshold question is the first factor: whether the nonclient "is an intended beneficiary of the transaction to which the advice pertained." *Id.* If the nonclient was not the intended beneficiary, there is no duty and no other *Trask* factor need be considered. *Id.* The determinative inquiry is what the client – in this case FHS – intended to accomplish through the representation. *See Strait v. Kennedy*, 13 P.3d 671, 675 (Wash. Ct. App. 2000) (relevant inquiry is what client intended to accomplish in litigation, not what nonclient plaintiff hoped to gain by it); 1 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 7:14, 876 (2019 ed.) (Inquiry "is whether *both* the attorney and the client intended

BENNETT BIGELOW DEFENDANTS' MOTION TO DISMISS
(NO. 3:20-cv-5505-BHS) - 17

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

the [nonclient] to be the beneficiary of legal services."). Were it otherwise, a nonclient could unilaterally create conflicting duties on the part of counsel for another party. An attorney's duties do not extend to "merely incidental" beneficiaries, but rather only to *direct* beneficiaries, i.e., one for whom the attorney's services are engaged.

No Washington case – nor any other jurisdiction – has ever held that a client's litigation adversary was an intended beneficiary of the client's engagement of counsel to defend against claims brought by that very adversary. Mallen & Smith, *supra*, § 7.8, 855, 857 ("[N]o jurisdiction has found a duty of care based on negligent services by an attorney to an adverse party. … [T]here are common fact patterns, such as adversaries in litigation, which have never resulted in negligence liability in an American jurisdiction.") Indeed, where there is even a risk of potential conflicting interests between a client and a nonclient – as is inherent between a client and its litigation adversary – Washington follows a bright-line rule that counsel owe no duty of care to the nonclient. *Mazon v. Krafchick*, 144 P.3d 1168, 1172 (Wash. 2006). Such a notion is implausible on its face, and Plaintiff pleads no facts that would plausibly suggest that FHS hired the BBL Defendants for Plaintiff's benefit.

### 3. Plaintiff Pleads No Plausible Claims for Breach of Contract or a Derivative Covenant of Good Faith and Fair Dealing.

Plaintiff's contract claims fail because Plaintiff pleads no facts compliant with the *Twombly/Iqbal* pleading standard that plausibly suggest the existence of a contract between him and the attorneys for his litigation adversary, the BBL Defendants. Such conclusory allegations as Plaintiff makes fail. His bald allegation of a contractual relationship – that an attorney for one client, simply by virtue of representing that client, entered into a contractual relationship with the adverse party – is utterly *implausible.* Such an undertaking would be rife with conflicts of interest with a current client (FHS). Washington follows the objective manifestation test for contracts. *Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 949 (Wash. 2004). For a contract to form, the parties must objectively manifest their mutual assent manifested by an offer and

BENNETT BIGELOW DEFENDANTS' MOTION TO DISMISS
(NO. 3:20-cv-5505-BHS) - 18

acceptance, the terms must be sufficiently definite, and the contract must be supported by consideration. *Id.* Plaintiff pleads no facts that plausibly suggest the BBL Defendants entered into a contractual relationship with him in regard to the credentialing process, related appeals, or subsequent litigation.

Nor can Plaintiff predicate contract claims against the BBL Defendants based on the alleged existence of a contract with FHS. As FHS' attorneys, the BBL Defendants were its disclosed agents. It has long been the law that an agent for a disclosed principle to a contract is not liable for the principle's performance. *See*, *e.g.*, *Griffiths & Sprague Stevedoring Co.*, 430 P.2d 600, 604 (Wash. 1967); *Hopkins v. Anderson*, 502 P.2d 473, 476 (Wash. Ct. App. 1972).

Couching his claims as a breach of the covenant of good faith and fair dealing inherent in every contract does not overcome these deficiencies. First, the predicate of such a claim is the existence of a contract itself, which Plaintiff fails to adequately allege as discussed above. *Johnson v. Yousoofian*, 930 P.3d 921, 925 (Wash. Ct. App. 1996) ("The implied duty of good faith is derivative, in that it applies to the performance of specific contract obligations. If there is no contractual duty, there is nothing that must be performed in good faith." (citations omitted)). Further, Plaintiff pleads no facts that plausibly suggest a violation of this covenant by his litigation adversary's attorney. The covenant obligates parties to a contract to cooperate with each other so that each may obtain the full benefit of performance, cannot add or contradict express contract terms and does not impose a free-floating obligation of good faith on the parties. Rather it arises only in connection with terms agreed to by the parties that give one party discretionary authority to determine a contractual term. *Rekhter v. DSHS*, 323 P.3d 1036, 1042 (Wash. 2014).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Amended Complaint fails to state a plausible claim against the BBL Defendants, and should be dismissed with prejudice.

BENNETT BIGELOW DEFENDANTS' MOTION TO DISMISS
(NO. 3:20-cv-5505-BHS) - 19

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

DATED this 25th day of June, 2020.

BYRNES KELLER CROMWELL LLP

By /s/ Bradley S. Keller
   Bradley S. Keller, WSBA #10665
By /s/ Keith D. Petrak
   Keith D. Petrak, WSBA #19159
   1000 Second Avenue, 38th Floor
   Seattle, Washington 98104
   Phone:  (206) 622-2000
   Fax:     (206) 622-2522
   bkeller@byrneskeller.com
   kpetrak@byrneskeller.com
   ***Attorneys for Defendants Bennett Bigelow &***
   ***Leedom, P.S., Bruce Megard and Erin Seeberger***

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that on the 25th day of June, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel on record and pro se plaintiff in the matter.

/s/ Keith D. Petrak
Byrnes Keller Cromwell LLP
1000 Second Avenue, 38th Floor
Seattle, WA 98104
Telephone: (206) 622-2000
Facsimile: (206) 622-2522
kpetrak@byrneskeller.com

BENNETT BIGELOW DEFENDANTS' MOTION TO DISMISS
(NO. 3:20-cv-5505-BHS) - 21

# APPENDIX

# Elkharwily II Opinion

Elkharwily v. Franciscan Health System, Not Reported in Fed. Supp. (2018)

2018 WL 690945, 2018 A.D. Cases 36,564

2018 WL 690945
United States District
Court, W.D. Washington,
at Tacoma.

Alaa ELKHARWILY, M.D., Plaintiff,
v.
FRANCISCAN HEALTH
SYSTEM, a Washington non-
profit corporation, Defendant.

CASE NO. C17-5838-RBL
|
Signed 02/02/2018

**Attorneys and Law Firms**

Richard T. Wylie, Minneapolis, MN, John
Christopher Cain, Tacoma, WA, for Plaintiff.

Bruce W. Megard, Jr., Erin C. Seeberger,
Bennett Bigelow & Leedom, Seattle, WA, for
Defendant.

ORDER

[DKTS. #12, #13, #28]

Ronald B. Leighton, United States District
Judge

**\*1** THIS MATTER is before the Court
on Defendant Franciscan Health System's
Motion to Dismiss [Dkt. # 12], Plaintiff
Alaa Elkharwily's Motion for Leave to File
a Second Amended Complaint [Dkt. #13],
and Franciscan's Motion for Sanctions [Dkt.
#28]. This is the second case arising out of
Elkharwily's failure to obtain privileges at St.
Joseph Medical Center. Elkharwily alleges that
Franciscan and its attorneys concealed and
fabricated evidence at the first trial, resulting
in fraud on the court. Franciscan argues
that *res judicata* bars Elkharwily's baseless
fraud claims because Judge Bryan previously
adjudicated them.

**I. BACKGROUND**

Elkharwily is a physician with a bi-polar
disorder diagnosis. In 2012, Group Health
(a non-party) offered Elkharwily employment
as a night-shift hospitalist (or nocturnist),
contingent on him receiving privileges to
practice at Franciscan's St. Joseph Medical
Center in Tacoma.

Franciscan's medical executive committee
(comprised of doctors and hospital
administrators) reviewed Elkharwily's
application for privileges and granted
him temporary privileges. Shortly thereafter,
Franciscan's credentials committee issued a
report to the executive committee concerning
"red flags" in Elkharwily's background. The
executive committee rescinded Elkharwily's
temporary privileges, and requested that
Franciscan Dr.'s deLeon and Haftel interview
Elkharwily about the report. After the
interview, the doctors expressed concerns
to the medical executive committee about
Elkharwily's clinical competence.

The executive committee ordered a
competency assessment, noting that Group
Health could proctor (provide on-the-job
supervision and assessment) Elkharwily. Group
Health approved a six-week proctoring plan

Case 3:20-cv-05505-BHS   Document 23   Filed 06/25/20   Page 25 of 43

Elkharwily v. Franciscan Health System, Not Reported in Fed. Supp. (2018)
2018 WL 690945, 2018 A.D. Cases 36,564

that allowed Elkharwily to shadow the day-shift hospitalist team. The executive committee determined that because Elkharwily is a nocturnist, he needed nighttime proctoring. Group Health informed the executive committee that it did not have adequate staffing to proctor Elkharwily at night. The executive committee determined that Elkharwily could not gain sufficient clinical experience to obtain hospital privileges and upheld its decision to rescind Elkharwily's temporary privileges.

Elkharwily appealed to a review-hearing panel that consisted of three active Franciscan staff members who were unfamiliar with the case. The panel made a non-binding recommendation that the executive committee should provide Elkharwily the opportunity to respond to its rejection of the proctoring plan. Nevertheless, the executive committee rejected the recommendation, stating that the hearing panel incorrectly focused on process instead of Elkharwily's competence. The executive committee noted that Group Health did not have adequate staff for nighttime proctoring and Franciscan did not have an obligation to provide proctoring—it upheld its decision to rescind Elkharwily's temporary privileges.

Over two years later, Elkharwily sued Franciscan in state court, claiming that Franciscan discriminated against him, in violation of the Washington Law Against Discrimination, RCW 49.60.030, the Rehabilitation Act, 29 U.S.C. § 794, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 200(d), and the False Claims Act, 31 U.S.C. § 3729. *See Alaa Elkharwily, M.D. v. Franciscan Health System*, Case No. 15-2-10437-9. Franciscan removed the case

to this district. *See Elkharwily v Franciscan*, Cause No.15-cv-05579-RJB, Dkt. #1. [1] Judge Bryan presided over a jury trial. Elkharwily argued that Franciscan rescinded his temporary privileges because of his bi-polar disorder, asserting that Franciscan falsely documented in committee minutes that Group Health did not have proctors available at night. Judge Bryan instructed the jury that to prevail, Elkharwily had the burden of proving that he was able to perform the essential function of the nocturnist job, and that his disability was a substantial factor in Franciscan's decision to deny privileges. The jury found in Franciscan's favor.

**\*2** Elkharwily moved for a new trial, claiming that the verdict was the result of false evidence. Dkt. #132. Specifically, Elkharwily alleged that Franciscan Dr. deLeon lied during Elkharwily's hearing panel when he stated that the medical executive committee did not request or sanction proctoring. *Id.* at 7. Additionally, Elkharwily alleged that Franciscan Dr. Cammarano lied when he testified at trial that Franciscan never requested daytime proctoring for Elkharwily. *Id.* at 7–8. Judge Bryan denied the motion, determining "[n]one of what Plaintiff presents in support of his motion rises to the level of a proven lie ... that would justify a new trial." Dkt. #139 at 3.

Undeterred, Elkharwily filed a motion for reconsideration, trying again to convince Judge Bryan that the verdict was the product of fraud. Elkharwily argued that Franciscan's witnesses and attorney lied to the jury when they claimed that proctoring at night is neither possible nor safe. Dkt. #140 at 7. Judge Bryan denied the motion, ruling that Elkharwily had had the

Case 3:20-cv-05505-BHS Document 23 Filed 06/25/20 Page 26 of 43

Elkharwily v. Franciscan Health System, Not Reported in Fed. Supp. (2018)
2018 WL 690945, 2018 A.D. Cases 36,564

opportunity during discovery, trial preparation, and cross-exam to challenge the evidence. Dkt. #145.

Unwilling to accept the Court's ruling, Elkharwily filed a third post-trial motion seven days later. This time he sought Relief from Judgment under Fed. R. Civ. P. 60(b) and (d), insisting again that Franciscan's attorney committed fraud on the court, alleging he redacted committee minutes to purposely conceal the identity of possible nocturnist proctors:

> Plaintiff has also discovered that Bob Thong, MD, was the 4th nocturnist.... [A]mazing what a little chat with few people could reveal ... Drs. Pujol and [sic] Hasnain and Thong would certainly have been on Defendant's credentialing minutes in 2012, but their names were hidden from Plaintiff.

Dkt. #146 at 6.

While that motion was pending, Elkharwily appealed to the Ninth Circuit, and as a result, Judge Bryan struck the motion. Dkt. #157. Elkharwily asked Judge Bryan to make an "indicative ruling" (under Rule 62.1 and FRAP 12.1) despite the appeal, claiming that the motion raised issues not on appeal. Dkt. #158. The Ninth Circuit remanded the case for that limited purpose. Dkt. #160; Dkt. #174. Judge Bryan denied the motion, concluding

that "[t]his allegation appears contrary to the evidence.... Plaintiff's counsel was the only person to conclude, without support, 'that Dr. Pujol, Dr. Hasnain, and Dr. Thong were available to proctor [Elkharwily] at night.' This unsubstantiated statement, without any support on the record, is not sufficient to trigger Federal Rule of Civil Procedure 60(b)." Dkt. #184 at 3–4.

Unconvinced, Elkharwily filed a fourth post-trial motion [Dkt. #185], asserting that he now really had discovered new evidence demonstrating his fraud claim. He claimed he spoke to Dr. Bob Thong for the first time, and "developed information since the [last] hearing ... that there were GHP hospitalists available and [sic] qualified and willing to proctor Plaintiff ... at and after the Hearing Panel." Dkt. #185 at 2. Judge Bryan again rejected Elkharwily's claim: "much of the alleged new evidence [was] hearsay ... [and] could have been brought to the court's attention earlier with reasonable diligence." Dkt. #187.

> Unsatisfied, Elkharwily sued Franciscan again, in this Court, purporting to bring a "collateral attack" on the judgment now on appeal in the Ninth Circuit. Elkharwily asks this Court to vacate Judge Bryan's final judgement, to effectively moot the appeal and allow him to re-litigate his discrimination claim. His complaint made the same allegations that Judge Bryan already addressed and rejected—that Franciscan's attorney "concealed by redaction and alteration of documents all references to Drs. Pujol, Hasnain and Thong in all minutes ... [and] falsely stated to the jury ... [that] 'Group Health ... did not have staff to monitor Dr.

Elkharwily at night.' '' 17-cv-05838-RBL, Dkt. #1 at 18 (citation omitted).

**\*3** Elkharwily filed an amended complaint—claiming new evidence—but it too contains facts and accusations that Judge Bryan already rejected. Elkharwily claims that he recently learned from Thong and other Franciscan personnel that doctors were indeed available to proctor him. This new information caused him to analyze the committee minutes again, and he discovered that Franciscan's attorney "fabricated and altered those committee minutes so as to conceal evidence of the availability, and qualifications of those three doctors to proctor him ..." *Id.*, Dkt. #9 at 6–9.

In response to Franciscan's Motion to Dismiss, Elkharwily asks for leave to file a second amended complaint—at least his seventh overall effort to allege and demonstrate fraud.

## II. DISCUSSION

### A. Motion to Dismiss.

Franciscan seeks dismissal based on *res judicata*. Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* Although the Court must accept as true the complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper 12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citing *id.*).

Although *Iqbal* establishes the standard for deciding a Rule 12(b)(6) motion, Rule 12(c) is "functionally identical" to Rule 12(b)(6) and that "the same standard of review" applies to motions brought under either rule. *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 647 F.3d 1047 (9th Cir. 2011), *citing Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989); *see also Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (applying *Iqbal* to a Rule 12(c) motion).

Under *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The doctrine of *res judicata* bars a party from re-filing a case where three elements are met: (1) identity of

2018 WL 690945, 2018 A.D. Cases 36,564

claims; (2) final judgment on the merits; and (3) identity or privity between parties. *Frank v. United Airlines, Inc.*, 216 F.3d 845, 850, n.4 (9th Cir. 2000).

Elkharwily argues that *res judicata* does not bar his new claims because they are based on Rule 60(d)(3), unlike his prior arguments under Rule 60(*b*)(3). He relies on three cases, but none provides even tangential support for the proposition that one can avoid the preclusive effect of a prior litigation loss by simply citing a different section of the same rule. Indeed, none even addresses *res judicata*.

**\*4** Elkharwily cites *Haeger v. Goodyear Tire & Rubber Co.*, 793 F.3d 1122, 1125 n.1 (9th Cir. 2003), for a true but unhelpful statement: "[l]itigation is not a game. It is the time-honored method of seeking the truth, finding the truth, and doing justice." He also relies on *United States v. Beggarly*, 524 U.S. 38, 46 (1998), but the Court there determined that allegations of failure to furnish relevant information would "at best form the basis for a Rule 60(b)(3) motion" and that "independent actions should be available only to prevent a grave miscarriage of justice." It certainly did not hold that a claim of fraud already adjudicated could be renamed as an independent action and successfully overcome the *res judicata* bar. Finally, Elkharwily cites *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1129 [1130] (9th Cir. 1995), which did involve fraud on the court, but did not involve serial motions and lawsuits all based on the same, conclusory allegation of "fraud." And it did not address the application of *res judicata,* where, as here, the fraud claims have already been heard and rejected.

There is no authority for the proposition that changing the grounds for relief from Rule 60(b) to Rule 60(d) is an effective way to reargue the same theories free of the effects of *res judicata.*

Elkharwily clearly and repeatedly insisted to Judge Bryan that the verdict and the judgment were the result of fraud—he claimed then, as he does now, that Franciscan's attorney altered or forged the committee minutes to conceal the identity of proctors. Judge Bryan fully heard and repeatedly rejected these claims and his judgment and orders are on appeal. The law predictably and wisely does not permit a dissatisfied litigant to keep suing on the same claim until he wins.

Franciscan's Motion to Dismiss [Dkt. #12] is **GRANTED**.

**B. Motion for Leave to Amend.**

Elkharwily amended his complaint once in this case, and seeks leave to do so again, including eight pages that detail 18 specific instances of what he perceives as fraud on the court. Franciscan argues that amendment would be futile because *res judicata* bars Elkharwily's claims.

Leave to amend a complaint under Fed. R. Civ. P. 15(a) "shall be freely given when justice so requires." *Carvalho v. Equifax Info. Services, LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)). This policy is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted). In determining whether to grant leave under Rule 15, courts consider five factors: "bad faith, undue delay, prejudice to

Case 3:20-cv-05505-BHS Document 23 Filed 06/25/20 Page 29 of 43

Elkharwily v. Franciscan Health System, Not Reported in Fed. Supp. (2018)

2018 WL 690945, 2018 A.D. Cases 36,564

the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (emphasis added). A proposed amendment is futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Gaskill v. Travelers Ins. Co.*, No. 11-cv-05847-RJB, 2012 WL 1605221, at *2 (W.D. Wash. May 8, 2012) (citing *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1393 (9th Cir. 1997)).

Elkharwily's proposed second amended complaint would be futile because his claims are barred by *res judicata*, as described above. Adding new and more details about facts and events and arguments that already took place does not change the fact that he either did or could have alleged all of these facts in the prior case and in his prior motions.

Elkharwily's Motion for Leave to Amend [Dkt. #13] is **DENIED**.

## C. Motion for Sanctions Pursuant to FRCP 11.

Franciscan asks the court to impose sanctions (in the form of attorney's fees) against Elkharwily for frivolous litigation.

Under Fed R. Civ. P. 11(b), every attorney or unrepresented litigant's filings include a representation that it is not presented for any improper purpose, that the claims and defenses are warranted by law, and that their factual contentions have or will have evidentiary support. Under Rule 11(c), after notice and an opportunity to be heard, a court can impose an appropriate sanction for such violations.

**\*5** Elkharwily has long been on notice that his fraud claims were or could have been litigated previously, even if they were meritorious. Elkharwily has made no real attempt to articulate why *res judicata* does not apply, and his "b/d" distinction is unavailing.

Franciscan's Motion for Sanctions is **GRANTED**. Elkharwily shall pay Franciscan $2500 within **21 days** of this order, and file a notice in this court that he has done so. If he does not, the Clerk shall enter a judgment in that amount against Elkharwily and in favor of Franciscan. In the meantime, Elkharwily's claims are **DISMISSED WITH PREJUDICE** and without leave to amend. Elkharwily's Motion for Relief from Deadline for Filing Reply [Dkt. #28] is **DENIED AS MOOT**.

IT IS SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2018 WL 690945, 2018 A.D. Cases 36,564

## Footnotes

1        Unless otherwise noted, all in-text citations to the Dkt. are to this prior case.

**Elkharwily v. Franciscan Health System, Not Reported in Fed. Supp. (2018)**

2018 WL 690945, 2018 A.D. Cases 36,564

---

**End of Document**                          © 2020 Thomson Reuters. No claim to original U.S. Government Works.

# Elkharwily I Orders
# (Dkts.: 139, 145, 184 & 187)

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF WASHINGTON
9                            AT TACOMA

10

11    ALAA ELKHARWILY, M.D.,                 CASE NO. 3:15-cv-05579-RJB

                         Plaintiff,          ORDER DENYING PLAINTIFF'S
12                                           MOTION FOR A NEW TRIAL
                v.
13
      FRANCISCAN HEALTH SYSTEM, a
14    Washington non-profit corporation,

15                       Defendant.

16

17          This matter comes before the court on Plaintiff's Motion for New Trial (Dkt. 132).  The

18    court is familiar with the records and files herein, the events of the trial, and the documents filed

19    in support of and in opposition to the motion.  Oral Argument would not be helpful in resolving

20    this motion, and Plaintiff's request for oral argument is DENIED.

21          Plaintiff's motion is based on three primary arguments:

22          1.    The defense verdict resulted from false evidence from Defendant's witnesses;

23          2.    The verdict was against the clear weight of the evidence; and

24          3.    The Court made erroneous evidentiary rulings.

1      The Court will address these matters in the following order:  First, regarding evidentiary

2  rulings, second regarding alleged false evidence, and third, the weight of the evidence.

3      <u>Evidentiary Rulings</u>.  Plaintiff argues that the Court erred in rejecting Exhibit 45.  Exhibit

4  45 was an email sent by Plaintiff's witness, Dr. Dempster, that, "simply memorializes Dr.

5  Dempster's views and position on the matter."  Dkt. 136-5, page 43 at line 11 (rough transcript

6  of Dr. Dempster's testimony).  The email was not an appropriate exhibit.  Plaintiff's counsel

7  inquired about the matters covered in the email and the witness, Dr. Dempster, used Proposed

8  Exhibit 45 to refresh his recollection.  There was no error nor any prejudice to Plaintiff in

9  rejecting the exhibit.

10      Plaintiff argues that the Court erred at the rough transcript at Docket Number 136-5 at

11  pages 48-49 of Dr. Dempster's testimony.  The question was, "Did you observe or conclude that

12  Franciscan was using the reasons concerning Board Certification and lack of experience to mask

13  the motivation based on his mental disability?"  In response to an objection, the Court ruled that

14  the question was leading in form (*see* page 49, line 6).  It clearly was leading, and there was no

15  error nor prejudice to Plaintiff in sustaining that objection.

16      <u>False evidence</u>.  Plaintiff makes substantial argument that witnesses testified untruthfully,

17  and refers to many "lies" that were told by various witnesses.  A lie is an untrue statement made

18  with the intent to deceive.  There are many untrue statements made without the intent to deceive.

19  Memories are inconsistent and often play tricks on witnesses' recollections.  It is not appropriate

20  to call every bit of evidence that a party disagrees with a "lie."

21      Trials allow a search for the truth.  They are designed to allow counsel to test all

22  testimony in light of the totality of the evidence and the record.  Sometimes the truth is not

23

24

ORDER DENYING PLAINTIFF'S MOTION FOR
A NEW TRIAL- 2

1    uncovered.  The jury, however, is the arbiter in determining what is more probably true than not

2    true.

3          Here, the burden of proof was on the Plaintiff to prove that his bipolar disability was a

4    substantial factor in Defendant Franciscan's decision to deny his application for credentials.  He

5    also had the burden to prove that he was able to perform the essential functions of the job in

6    question.  *See* Instruction Number 9 at Docket Number 128.  There was plenty of evidence

7    supporting Plaintiff's position.   There was also plenty of evidence supporting the Defendant's

8    position.  After a fair trial, the jury found that Plaintiff had not borne his burden to prove that the

9    elements of his claim were more probably true than Defendant's position.

10          None of what Plaintiff presents in support of this motion rises to the level of a proven lie

11    – or lies – that would justify a new trial.  Differences in recollection or opinion do not justify a

12    new trial.   There are sharp differences in the evidence in many, if not most, trials, and those

13    differences can usually be attributed to memory differences occurring in good faith rather than to

14    intentional lies.

15          There is no justification in Plaintiff's moving papers or in the events of the trial that

16    would justify a conclusion that the verdict resulted from intentionally false evidence by

17    Defendant's witnesses.

18          Clear weight of the evidence.  The verdict was not contrary to the clear weight of the

19    evidence.  There was evidence in the record from which the jury could have found for Plaintiff or

20    for Defendant.   The jury apparently followed the instructions of the Court, carefully considered

21    the evidence under those instructions, and came to a conclusion contrary to Plaintiff's position.

22    Their conclusion was not contrary to the clear weight of the evidence.

23

24

ORDER DENYING PLAINTIFF'S MOTION FOR
A NEW TRIAL- 3

1     <u>Footnote</u>.  The undersigned observer thought that it was Group Health, a non-party, that

2  finally pulled the rug out from under Plaintiff's application for credentials by not arranging for a

3  proctoring program that was satisfactory to the Defendant, and through which Plaintiff would

4  have had the opportunity to prove that he could perform the essential functions of the job in

5  question.

6          Therefore, it is now

7          ORDERED that Plaintiff's Motion for a New Trial (Dkt. 132) is hereby DENIED.

8          The Clerk is directed to send uncertified copies of this Order to all counsel of record and

9  to any party appearing *pro se* at said party's last known address.

10          Dated this 6th day of December, 2016.

11

12

13                              ROBERT J. BRYAN
                                United States District Judge

14

15

16

17

18

19

20

21

22

23

24

ORDER DENYING PLAINTIFF'S MOTION FOR
A NEW TRIAL- 4

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9

10

| | |
|---|---|
| ALAA ELKHARWILY, M.D., | CASE NO. 15-5579RJB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S |
| v. | MOTION FOR RECONSIDERATION |
| FRANCISCAN HEALTH SYSTEM, a Washington non-profit corporation, | |
| Defendant. | |

16

     This matter comes before the court on Plaintiff's Motion for Reconsideration (Dkt 140).

The court is fully advised.  Oral argument is not necessary to fairly resolve this motion.

     Plaintiff claims that the court erred by using an incorrect legal standard in its Order

Denying Plaintiff's Motion for a New Trial (Dkt 139).  Citing cases from other circuits, Plaintiff

argues that the correct standard, that the court should have applied, is as follows:

> ([A] new trial should be granted where the court is reasonably well satisfied that
> the testimony given by a material witness is false; that without it, a jury might
> have reached a different conclusion; that the party seeking a new trial was taken
> by surprise when the false testimony was given and was unable to meet it or did
> not know of its falsity until after the trial.)

1    For purposes of this Motion, the court will assume that Plaintiff's suggested rule is the

2    correct one.  That rule still offers Plaintiff no relief for the following reasons:  First, the court is

3    <u>not</u> reasonably well satisfied that the testimony given by one or more material witnesses was

4    false.  Second, although Plaintiff and Plaintiff's counsel may have been taken by surprise at trial

5    when testimony was different than expected, they had ample opportunity at trial to meet

6    unexpected testimony.  That opportunity was provided by the discovery rules, careful and

7    thorough preparation, and cross-examination.  The Motion for Reconsideration (Dkt 140) is

8    HEREBY DENIED.

9    The Clerk is directed to send uncertified copies of this Order to all counsel of record and

10   to any party appearing *pro se* at said party's last known address.

11   Dated this 27th  day of December, 2016.

12

13

14   ROBERT J. BRYAN
     United States District Judge

15

16

17

18

19

20

21

22

23

24

ORDER DENYING PLAINTIFF'S MOTION FOR
RECONSIDERATION- 2

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9

10

| | |
|---|---|
| ALAA ELKHARWILY, M.D.,<br><br>                    Plaintiff,<br><br>        v.<br><br>FRANCISCAN HEALTH SYSTEM, a<br>Washington non-profit corporation,<br><br>                    Defendant. | CASE NO. 3:15-cv-05579-RJB<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR RELIEF FROM<br>JUDGMENT – RULE 60 |

11

12

13

14

15

16

17

18

19

20

21

        This matter comes before the court on the Ninth Circuit's Order remanding the case for

the limited purposed of considering Plaintiff's Motion for Relief from Judgment – Rule 60 (Dkt.

146, refiled as Dkt. 172).  The court is familiar with the records and files herein, the events of the

trial, and documents filed in support of and in in opposition to the motion.  Telephonic oral

argument was held on April 4, 2017.

22

        For the reasons stated  herein, the motion should be denied.

23

24

        This motion stems from a jury verdict adverse to plaintiff (Dkt. 126) in a disability

discrimination case.  Plaintiff, a physician, was hired by non-party Group Health to serve as a

1   "nocturnal hospitalist," working in defendant Franciscan Health System's (FHS) Tacoma

2   hospital. The job required that plaintiff be "credentialed" by FHS – that is, authorized by FHS to

3   have privileges to practice in FHS's hospital. His application for such privileges was denied by

4   FHS. Plaintiff claimed that he had a disability that was a substantial factor in the FHS decision

5   to deny his application.

6         After a seven-day jury trial and a day of deliberation, the jury found for FHS and against

7   plaintiff (Dkt. 126). Judgment of Dismissal (Dkt. 130) was entered. Plaintiff's Motion for a

8   New Trial was denied (Dkt. 139) and Plaintiff's Motion for Reconsideration of that ruling was

9   denied (Dkt. 145). Plaintiff appealed to the Ninth Circuit (Dkt. 151) and filed the instant motion.

10   The appellate court authorized this district court to consider the motion (Dkt. 174)

11         Somewhat lost in plaintiff's efforts to overturn the verdict are the primary concerns of the

12   trial: Plaintiff had to prove by a preponderance of the evidence the elements of his claim as set

13   forth in the Jury Instructions (Dkt. 128, Instruction No. 9): essentially that "he had a disability;

14   he was able to perform the essential functions of the job in question; and his disability was a

15   substantial factor in FHS' decision to deny his application."

16         The parties agreed that plaintiff had a disability, bipolar disorder. Therefore the jury had

17   to have found either that (1) plaintiff had **not** proved, by a preponderance of the evidence, that he

18   could perform the essential functions of the job in question, or (2) that his disability was **not** a

19   substantial factor in FHS' decision to deny his application.

20         The court has read, read, and reread the parties' submissions in support of and in

21   opposition to this FRCP 60 motion and has again considered the events of the trial. The court is

22   firmly of the opinion that in discovery and at trial, there has been no showing, by either a

23   preponderance or a clear and convincing standard, of "newly discovered evidence that, with

24

1    reasonable diligence, could not have been discovered in time to move for a new trial under Rule

2    29(b)," nor has there been a showing, by either standard, of "fraud (whether previously called

3    intrinsic or extrinsic) misrepresentation, or misconduct by an opposing party."  FRCP

4    60(b)(2)(3).

5        Plaintiff's showing has been nothing more than the kind of issues that commonly arise in

6    the give and take of discovery and trial.

7        Discovery was properly conducted in all respects.

8        The jury was properly instructed about counsel's statements to the jury (Dkt. 128,

9    Instruction No.5), and none of defense counsel's statements amounted to fraud,

10   misrepresentation, or misconduct.

11       The issues about the accuracy and consistency of the testimony of the various witnesses

12   over seven days of trial were of the usual kind commonly seen in trials, and there is no showing

13   of any fraud, misrepresentation, or misconduct.

14       The post-trial motions have focused on a collateral issue – whether "proctoring"

15   (supervision) was available to assist and train plaintiff as a nocturnal hospitalist.  This issue was

16   relative to the question of whether plaintiff could perform the essential elements of the job in

17   question.

18       It became non-party Group Health's responsibility to provide nocturnal proctoring to

19   plaintiff.   Dr. Dempster of Group Health testified that Group Health could not provide

20   appropriate nocturnal proctoring in spite of hiring four full time equivalent hospitalists.  *See* Dkt.

21   180, page 31 line 14-19 & page 35, line 10.  Plaintiff now alleges that there were Group Health

22   nocturnal hospitalists who, unbeknownst to plaintiff, could have proctored plaintiff.  This

23   allegation appears contrary to the evidence.  No witness testified that that Group Health

24

ORDER DENYING PLAINTIFF'S MOTION FOR
RELIEF FROM JUDGMENT – RULE 60- 3

1   physicians were qualified and available to proctor plaintiff at night.  Plaintiff's counsel was the

2   only person to conclude, without support, "that Dr. Pujol, Dr. Hasmain, and Dr.Thong were

3   available to proctor him [plaintiff] at night."  Dkt. 172, page 9 at line 3.  This unsubstantiated

4   statement, without any support on the record, is not sufficient to trigger Federal Rule of Civil

5   Procedure 60(b).

6       Therefore, it is now

7       ORDERED that plaintiff's Motion for Relief from Judgment – Rule 60 (Dkt. 146, refiled

8   as Dkt. 172) is DENIED.

9       Let the appeal proceed.

10       The Clerk is directed to send uncertified copies of this Order to all counsel of record and

11   to any party appearing *pro se* at said party's last known address, and to the Court of Appeals for

12   the Ninth Circuit.

13       Dated this 4th day of May, 2017.

14

15

16       ROBERT J. BRYAN
        United States District Judge

17

18

19

20

21

22

23

24

ORDER DENYING PLAINTIFF'S MOTION FOR
RELIEF FROM JUDGMENT – RULE 60- 4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ALAA ELKHARWILY, M.D.,

Plaintiff,

v.

FRANCISCAN HEALTH SYSTEM, a
Washington non-profit corporation,

Defendant.

CASE NO. 3:15-cv-05579-RJB

ORDER DENYING PLAINTIFF'S
MOTION FOR
RECONSIDERATION OF ORDER
(DKT. 184)

This matter comes before the court on the above-referenced motion (Dkt. 185). The court
is familiar with the records and files herein and documents filed in support of the motion. Oral
argument was held on the underlying motion on May 4, 2017.

Local Civil Rule 7(h), Motions for Reconsideration, provides:

1. Standard. Motions for reconsideration are disfavored. The court will
ordinarily deny such motions in the absence of a showing of manifest error in the prior
ruling or a showing of new facts or legal authority which could not have been brought to
its attention earlier with reasonable diligence.

1       Plaintiff's Motion for Reconsideration does not show either manifest error in the prior

2 ruling or new facts or legal authority which could not have been brought to the court's attention

3 earlier with reasonable diligence.  The court notes that much of the alleged new evidence is

4 hearsay contained in the Declaration of Alaa Elkharwily M.D. in Support of Plaintiff's Motion

5 for Reconsideration (Dkt. 186), and it further appears that all of the alleged new facts could have

6 been brought to the court's attention earlier with reasonable diligence.

7       Accordingly, Plaintiff's Motion for Reconsideration of Order (Dkt. 184) is hereby

8 DENIED.

9       The Clerk is directed to send uncertified copies of this Order to all counsel of record, any

10 party appearing *pro se* at said party's last known address, and to the Court of Appeals for the

11 Ninth Circuit.

12       Dated this 9th day of May, 2017.

13

14

15       ROBERT J. BRYAN
          United States District Judge

16

17

18

19

20

21

22

23

24

ORDER DENYING PLAINTIFF'S MOTION FOR
RECONSIDERATION OF ORDER (DKT. 184)- 2